UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **FERRANDINO & SON INC** | **CASE NO. 6:23-CV-00679** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **W M G DEVELOPMENT LLC** | **MAGISTRATE JUDGE DAVID J. AYO** |

**MEMORANDUM RULING**

The present matter before the Court is the Motion for Preliminary Injunction to Enjoin Arbitration and Request for Expedited Hearing [ECF No. 5] filed by Ferrandino & Son, Inc. ("Plaintiff"). WMG Development LLC ("Defendant") opposes the request for injunctive relief. An expedited hearing on the matter was held on May 30, 2023. Following the hearing, the Court requested additional briefing on the matter. The parties have now each submitted additional briefing to the Court.

**I.**
**BACKGROUND**

Plaintiff is a facility maintenance and construction company founded in 1993.[1] In August 2020, Plaintiff and Defendant entered into an agreement (the "Construction Contract") for Plaintiff to construct a freestanding dental clinic building in Lafayette, Louisiana.[2] The Construction Contract contained a provision stating that "[f]or any Claim subject to, but not resolved by, mediation pursuant to Article 15 of AIA Document A201– 2017, the method of binding dispute resolution shall be . . . Arbitration pursuant to Section 15.4 of AIA Document A201-2017." Section 15.4 of AIA Document A201-2017, in turn, provides, in part, that "any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree

---

[1] ECF Doc. 1 at ¶ 5.
[2] *Id.* at ¶ 6; Doc. 1-1.

1

otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement . . . ." (the "Arbitration Provision").[3]

The parties do not dispute that Plaintiff did not have an active contractor's license issued by the Louisiana State Licensing Board for Contractors at the time Plaintiff and Defendant entered into the Construction Contract.[4] The also do not dispute that Plaintiff never obtained a Contractor's License.[5] In September 2020, Plaintiff contracted with licensed Louisiana contractor, Sahene Construction, LLC ("Sahene"), to perform some of the initial work under the Construction Contract, such as site work and construction of the Dental Clinic building shell.[6] Given its lack of a Louisiana license, Plaintiff contends that it did not intend to perform any of the work on the Dental Clinic itself. Instead, when Sahene completed the work required under the Sahene contract, Plaintiff intended to subcontract the additional work required to complete the Dental Clinic project.[7] However, by the end of April 2021, Sahene had effectively abandoned the Dental Clinic project and failed to complete the work required under the Sahene contract.[8]

On February 19, 2022, WMG commenced an American Arbitration Association arbitration proceeding against Plaintiff (the "Arbitration Proceeding").[9] On February 8, 2023, Plaintiff commenced a lawsuit against Sahene captioned *Ferrandino & Son Inc. v. Sahene Construction LLC,* Case No. 23-00173, United States District Court for the Western District of Louisiana.[10] On

---

[3] *Id.* at ¶ 18.
[4] *Id.* at ¶ 7.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 11.
[8] *Id.* at ¶ 13.
[9] *WMG Development, LLC v. Ferrandino & Son, Inc.*, AAA Case 01-22-0000-7803.
[10] *Id.* at ¶ 24.

February 15, 2023, Sahene filed a voluntary petition for relief under Title 11, Chapter 11, Subchapter V of the Bankruptcy Code.[11]

During the course of the Arbitration Proceeding, Plaintiff sought a finding that the Construction Contract as a whole, and therefore the Arbitration Provision, was invalid because Plaintiff did not have a valid contractor's license.[12] On November 3, 2022, an Order was entered from the arbitration panel denying that request and finding that the Construction Contract was enforceable.[13] The Arbitration Proceeding is scheduled for hearing in New Orleans, Louisiana on June 26-20, 2023.[14] Plaintiff now seeks an injunction to prevent the Arbitration Proceeding from continuing on the basis that the Arbitration Provision is invalid and that, under the FAA, the Court (not the arbitrator) must decide the validity of the Construction Contract.

## II.
## LAW AND ANALYSIS

A party seeking a preliminary injunction under Rule 65 must show: (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury without the injunction; (3) that the threatened injury to the movant outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the injunction will not disserve the public interest.[15] A preliminary injunction is an extraordinary remedy and should only be granted if the movant has clearly carried the burden of persuasion with respect to all four factors.[16] The decision to grant a preliminary injunction is to be treated as the exception rather than the rule.[17] The Court must first

---

[11] *See In Re: Sahene Construction, LLC et al.* (M.D. La.) No. 23-10096.
[12] ECF Doc. 11-1.
[13] ECF Doc. 11-7.
[14] ECF Doc. 1, at ¶ 20.
[15] *See Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991).
[16] *See Allied Marketing Group, Inc. v. CDL Marketing, Inc.* 878 F.2d 806, 809 (5th Cir. 1989); *see also Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[17] *State of Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir.1975); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

determine whether Plaintiff has demonstrated a substantial likelihood of success on the merits of its claim.

**A. Federal Arbitration Act.**

The Court's analysis begins with the Federal Arbitration Act ("FAA"),[18] the federal statute that governs the enforceability of arbitration agreements. The FAA provides that:

> §2. A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.
>
> § 3. If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
>
> § 4. A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement....[19]

---

[18] 9 U.S.C.A. § 1, et seq.
[19] 9 U.S.C.A. § 1, et seq.

4

"The FAA establishes a strong federal policy in favor of compelling arbitration over litigation."[20] Following the enactment of the FAA, the Supreme Court has consistently advanced this policy by guarding against unwarranted judicial interference with arbitration agreements.[21] In that regard, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,[22] the Supreme Court developed what is known as the "severability doctrine."[23] After examining the FAA's text and structure, the Supreme Court held that an arbitration clause is "severable" from the underlying contract.[24] Under *Prima Paint*'s severability rule, a party cannot avoid arbitration by attacking the underlying contract containing an arbitration clause (termed the "container contract") but must challenge "the arbitration clause itself."[25] For example, a claim of fraud in the inducement with respect to the arbitration clause is for the court to decide but a claim of fraud in the inducement with respect to the container contract is a question for the arbitrator.[26] Since the party opposing arbitration in *Prima Paint* had only alleged fraud in the inducement with respect to the container contract, the Supreme Court referred that issue to the arbitrators in accordance with the arbitration clause. Thus, under *Prima Paint*, any challenges to the container contract are subject to arbitration absent a specific challenge to the validity of the arbitration clause.[27]

---

[20] *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (noting that "Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring it" (internal quotation marks and alteration omitted)); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001) (explaining that "the FAA was a response to hostility of American courts to the enforcement of arbitration agreements").

[21] *See, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc.*, —— U.S. ——, 139 S. Ct. 524, 529 (2019) (holding that courts cannot decide arbitrability issues that the parties agreed to submit to arbitration even if "the argument for arbitration is wholly groundless"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (holding that arbitrators have the primary power to decide legal issues relating to the parties' contract absent evidence indicating the parties intended to exclude those issues from arbitration).

[22] 388 U.S. 395, 402 (1967)

[23] 388 U.S. at 404.

[24] *Id.; see Prima Paint*, 388 U.S. at 400, 403-04.

[25] *Prima Paint*, 388 U.S. at 403.

[26] *Id.* at 403-04.

[27] *Id.* at 406.

5

The Supreme Court's decision in *Buckeye Check Cashing, Inc. v. Cardegna*[28] provides some guidance in applying *Prima Paint*'s severability doctrine where, as here, a party alleges that the container contact is void under state law. In that case, the party challenging the validity of an arbitration agreement argued that the entire contract—including the arbitration agreement—was void on the grounds of illegality, and that, based on a Florida Supreme Court decision, the arbitration agreement was not severable in light of Florida contract law and public policy. The Supreme Court rejected this argument, reasoning that "we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on 'Florida public policy and contract law.'"[29] The *Buckeye* Court specifically held that "there can be no doubt" that the word "contract" in § 2 "includes contracts that later prove to be void."[30]

Here, Plaintiff argues that the Construction Contract is illegal and therefore void under Louisiana law and, like the arbitration opponents in *Buckeye*, argues that the severability doctrine does not preserve the Arbitration Provision. Relying on Articles 1966 and 2029 cmt. B of the Louisiana Civil Code,[31] Plaintiff contends that, because the Construction Contract is illegal, the entire contract (including the Arbitration Provision) was never "formed" under Louisiana law. Plaintiff argues that *Prima Paint*'s severability doctrine does not apply to questions of contract formation under state law. Accordingly, Plaintiff argues that the Court—not the arbitrator—must decide the validity of the Construction Contract.

Plaintiff's argument fails for at least two reasons. First, Plaintiff cannot avoid *Prima Paint*'s severability doctrine by merely re-framing a legality challenge to the Construction Contract as a formation question under Louisiana law. The present case presents almost the same

---

[28] 546 U.S. 440 (2006).
[29] *Id.*, at 446.
[30] *Id.*, at 448.
[31] La. Civ. Code Art. 1966 ("An obligation cannot exist without a lawful cause.")

6

issue addressed by the Supreme Court in *Buckeye*. Specifically, Plaintiff argues that the "container contract" here is an illegal contract and therefore void under state law. Like *Buckeye*, however, Plaintiff does not argue that the Arbitration Provision, standing alone, is an illegal contract or that the parties did not agree to arbitrate their disputes. Under the severability doctrine, the validity of the Construction Contract is a question for the arbitrator. Nothing in the language of the Civil Code provisions cited by Plaintiff obviates the severability doctrine—nor could it. The severability doctrine is a federal doctrine rooted in the "strong federal policy in favor of compelling arbitration over litigation."[32] As explained by the Court in *Buckeye*, state law or public policy cannot overcome the severability doctrine with respect to the enforceability of an arbitration agreement. Similarly, for the same reasons, state law cannot overcome the federal severability doctrine merely by characterizing an illegality defense as a question of contract formation.

Second, the cases cited by Plaintiff to support its argument that formation questions must be decided by the court are distinguishable.[33] In each of these cases, unlike the present case, the "contract formation" question addressed by the court was the formation of the *arbitration agreement* itself; in other words, whether the parties had validly agreed to arbitrate.[34] In the instant case, Plaintiff has not argued that the parties did agree to arbitrate or, as previously explained, that the parties' arbitration agreement is illegal. Because Plaintiff has not placed the formation of the Arbitration Provision at issue, § 4 of the FAA does not require the Court to determine the validity

---

[32] *See Hall St. Assocs., L.L.C.*, 552 U.S. at 581 (noting that "Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring it" (internal quotation marks and alteration omitted)); *Circuit City Stores, Inc.*, 532 U.S. at 111 (explaining that "the FAA was a response to hostility of American courts to the enforcement of arbitration agreements").

[33] *Paradies Shops, LLC v. Brothers Petroleum, LLC*, 2022 WL 3134224 (5th Cir. 2022); *Gallagher v. Vokey*, 860 Fed. Appx. 354 (5th Cir. 2021); *Chester v. DirecTV, LLC*, 607 Fed. Appx. 362 (5th Cir. 2015); *Lefoldt v. Horne, LLP*, 853 F.3d 804 (5th Cir. 2017).

[34] *Id.*

of the Construction Contract—that is a question for the arbitrator to decide pursuant to the parties' arbitration agreement.[35]

In sum, Plaintiff has not established the first requirement for injunctive relief—namely, that there is a substantial likelihood of success on the merits of its claim. Accordingly, the Court need not address the remaining requirements for injunctive relief. The Motion for Preliminary Injunction [ECF No. 5] is DENIED.

THUS DONE in Chambers on this 13th day of June, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[35] Indeed, the arbitrator in this case has already decided this question and has rejected Plaintiff's position on the validity of the Construction Contract. *See* ECF Doc. 11-7.